The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman, the briefs and oral arguments before the Full Commission. The plaintiff did not appear at the hearing before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; rehear the parties or their representatives; or amend the Opinion and Award. Plaintiff's motion for remand back to the deputy commissioner is hereby DENIED. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Morgan S. Chapman.
 *********** STIPULATIONS
The parties at the hearing stipulated into evidence the following:
1. Packet of medical records and reports.
2. Form 28B dated May 9, 1997.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who is fifty-four years old and a high school graduate, began working for defendant-employer on January 15, 1996. The company made and decorated mirrors, picture frames and magazine racks. Plaintiff initially worked with the picture frames. She put them together, inspected completed frames and made repairs if necessary. In approximately April 1996 the company began to apply artificial gold and silver leaf to its products, and plaintiff subsequently learned how to perform that process. She applied a sizing to the wood surface and then coated the surface with the gold or silver leaf. Once the metal was attached, she would sometimes "distress it" using ethanol. Another employee in a different area would then lacquer the item after it had been leafed.
2. In approximately March 1996, plaintiff began to develop itchy sores on her scalp. The sores later spread to her hands. On May 6, 1996 she went to Dr. Surratt who questioned whether she had head lice or folliculitis. He prescribed an oral antibiotic for her and topical medications. The sores spread to her chest and legs. She saw her family doctor, Dr. Agsten, and Dr. Surratt on May 21, 1996 and received further medication for her dermatitis. Dr. Agsten apparently gave her a Kenalog injection on June 28, but his office note for that day was largely illegible. Plaintiff then saw Dr. Boyette on July 19, 1996 who recommended that she stay out of work for a few days.
3. By this time, a question had arisen regarding whether plaintiff's dermatitis was related to her various exposures at work. Dr. Smith evaluated her on August 28, 1996 and ordered a patch test, which proved to be negative. It was his impression that plaintiff probably had eczema and that the materials she worked with had aggravated her condition. Her outbreak appeared to be allergic in nature. On September 4 he gave her a Kenalog injection and advised that her condition would probably be aggravated if she returned to work.
4. Plaintiff was then sent to Duke Medical Center for evaluation. Dr. Murray, a dermatologist there, examined her on September 12, 1996. He ordered additional patch testing, sent her to Dr. Darcey in occupational medicine for an opinion and recommended that she have a complete physical. He also advised plaintiff that, if her condition were related to work, it would probably take six to eight months for the dermatitis to resolve. Dr. Darcey saw her on October 29, 1996 and noted that all of the patch testing performed on her had been negative. Both he and Dr. Murray concluded that her exposure to chemical irritants at work could account for her dermatitis. Consequently, defendants admitted liability for benefits under the Workers' Compensation Act pursuant to a Form 21 agreement, which was approved by the Industrial Commission.
5. Dr. Murray treated plaintiff with topical steroid solutions and antihistamines. He expected her condition to resolve no later than ten months from her last exposure. Since she was advised to not return to work where she would be exposed to chemical irritants, plaintiff looked for other employment and on December 10, 1996 began working for Lowe's as a cashier trainee. She earned wages there which were equivalent to the earnings with defendant employer. However, after twenty days of employment, she quit the job because her dermatitis was bothering her so much and because the medication she took to ease the itching made her sleepy.
6. On January 8, 1997 plaintiff returned to Dr. Murray who noted persistent dermatitis on examination. He gave her another Kenalog injection, which apparently improved her condition. She also continued to take the other medications he had prescribed. At the next office visit on February 20, 1997, Dr. Murray advised her that she could start vocational rehabilitation in six weeks. Plaintiff canceled her next appointment with him and did not reschedule it. Dr. Murray then indicated that she could have returned to regular work six weeks after her last office visit.
7. Plaintiff did not receive medical treatment for dermatitis for several months. She was treated for carpal tunnel syndrome in March and April 1997 and in May 1997 began seeing Dr. McKnight, a rheumatologist, for complaints of joint pain. He was of the impression that she had a form of arthritis. He also noted that she had an unusual rash and referred her to the Wake Forest University School of Medicine for evaluation by Dr. Jorizzo, who was in the dermatology department there. Dr. Jorizzo examined her on June 27, 1997 and was of the opinion that her dermatitis was probably atopic, or of an allergic nature, and he referred her to Dr. Sherertz, a colleague in the occupational medical department, for evaluation. Dr. Sherertz saw plaintiff on August 22, 1997 and took a detailed history of her former work duties with defendant-employer. Plaintiff's history and appearance were more suggestive of papular dermatitis, possibly with a component of folliculitis. Testing showed only a reaction to themerosal, which was probably irrelevant to her symptoms. Dr. Sherertz was of the impression that plaintiff may have had irritant contact dermatitis initially but that her condition was less likely to be primary contact dermatitis at that time since it had been so long since she had worked for defendant-employer.
8. Dr. Sherertz prescribed various medications for plaintiff, but plaintiff reported no improvement from them. Consequently, on September 16, 1997 the doctor referred her to East Carolina University for consideration of PUVA treatment since she appeared to have eosinophillic folliculitis. Plaintiff then went to Dr. Burke, a dermatologist at the East Carolina University School of Medicine, for an evaluation regarding PUVA therapy. Her condition at that time was improved to the point that she brought pictures of her affected skin to her November 12, 1997 appointment. He agreed that her dermatitis and pruritis could have started as an allergic reaction, but he saw no evidence of that on examination. Since she was improved, he was reluctant to start her on PUVA therapy. He ordered additional tests and prescribed medication for her. On December 11, 1997 plaintiff reported improvement regarding her itching. She advised the doctor that her problems were caused by her chemical exposure at work, but Dr. Burke indicated that he would not expect long-term problems for so long after she had been removed from the exposure.
9. Apparently plaintiff suffered a stroke later that month. She did not return to Dr. Burke until February 12, 1998. At that time she had minimal dermatitis on examination. She did not return to him again, but did see Dr. Murray once more on May 19, 1998. Dr. Murray noted that she still had dermatitis, but that she had multiple other health problems and that she appeared to be very anxious. He advised her to use a specific soap and lotion and also recommended that she have an evaluation of her immunologic status. Consequently, in June 1998 plaintiff saw Dr. Bressler. By that time she had had another stroke or transient ischemic attack. Dr. Bressler found no rash on examination and noted that her occupational irritant dermatitis was resolved. However, he evaluated her regarding possible connective tissue disease and other conditions unrelated to her dermatitis.
10. Plaintiff has had many other health problems besides her dermatitis and strokes, including insulin dependent diabetes, chronic obstructive pulmonary disease, arthritis, carpal tunnel syndrome and apparently cataracts.
11. Plaintiff's dermatitis was a compensable condition. As a result of her dermatitis, she was unable to work from July 20 through December 9, 1996 and defendants paid compensation to her for temporary total disability during that time. She then was able to earn equivalent wages with another employer from December 10 through 30, 1996. As of December 31, 1996 she again became disabled due to worsening of her dermatitis. She remained unable to work through April 3, 1997 when she reached maximum medical improvement. As of April 4, 1997 she was capable of performing regular job duties, although not in an environment where she would be exposed to chemical irritants. However, she made no effort to find suitable employment. Rather, she pursued a claim for social security disability regarding her multiple health problems, a claim she had filed before starting to work for defendant-employer.
12. Since plaintiff could perform regular job duties as of April 4, 1997, since she made no effort to find employment, and since the rehabilitation counselor had previously identified a number of jobs in the area which would be suitable for her, plaintiff was capable of working and earning wages after April 4, 1997. No loss of earning capacity has been proven.
13. Plaintiff has claimed that she developed cataracts and osteoporosis due to steroid medication prescribed for her dermatitis, and she has presented evidence from Dr. Kleinau, an optometrist, that cataracts can result from long term use of systemic steroids. However, the medical records submitted into evidence in this case only reflect that plaintiff received approximately three injections of a steroid medication for her dermatitis, although there were notes that she had reported to the doctors that she had taken Prednisone on at least one occasion. The records therefore do not show long-term use of systemic steroids due to her dermatitis. Furthermore, plaintiff was prescribed Prednisone by Dr. McKnight for her arthritis and she received multiple injections by him and Dr. Classen for problems with her hands and feet. She also used inhalers for her chronic obstructive pulmonary disease. Consequently, contrary to her testimony, she took steroid medications for other health problems.
14. Plaintiff has not proven that she developed cataracts or osteoporosis due to her dermatitis.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to compensation at the rate of $183.34 per week for thirteen and 3/7ths weeks for the additional temporary total disability she sustained as a result of this occupational disease. N.C. Gen. Stat. § 97-29.
2. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. However, she is not entitled to have defendants provide medical treatment for her unrelated health problems, including her alleged cataracts and osteoporosis. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $183.34 per week for thirteen and 3/7ths weeks for her temporary total disability. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, but not those arising from unrelated medical problems, including her alleged cataracts and osteoporosis.
3. An attorney's fee in the amount of $500.00 is hereby approved for plaintiff's former counsel, which fee shall be deducted from the aforesaid award and paid directly to Mr. King who was discharged by plaintiff after investing time representing her.
4. Defendants shall pay the costs.
This 1st day of October 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________ RENE C. RIGGSBEE COMMISSIONER